IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 23-21 |
| | : | |
| CHRISTOPHER DANIELS | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                                                  **March 8, 2024**

      Defendant Christopher Daniels is charged in a six-count superseding indictment with receipt of child pornography, possession of child pornography, three counts of access with intent to view child pornography, and failure to register as a sex offender. Daniels moves to suppress three images of child pornography found in the cached data of his cell phone, as well as statements he made during the execution of a search warrant on November 3, 2022 about his work status, compliance with the terms of supervised release, and possession of child pornography. Daniels argues (1) the government exceeded the scope of the search warrant by recovering cached data from his cell phone, (2) the search warrant was overbroad, and (3) law enforcement violated his right to counsel during questioning prior to arrest. Because cached data falls within the search warrant's language, which was limited to evidence of 18 U.S.C. § 2250 violations, the motion to suppress the evidence recovered from the search of Daniels' cell phone is denied. As to his statements, Daniels was not in custody during the interview, and law enforcement honored Daniels' limited invocation of the right to counsel on three specific topics. The motion to suppress Daniels' statements is also denied.

**FINDINGS OF FACT**[1]

Defendant Christopher Daniels was convicted of possession of child pornography in 2015. Because of this prior conviction, he is required to register as a sex offender pursuant to 18 U.S.C. § 2250. But in summer 2022, Daniels failed to renew his annual registration and changed his residence without notifying the Pennsylvania State Police. Following an investigation, on November 1, 2022, Federal Bureau of Investigation ("FBI") Special Agent James Zajac applied for a search warrant for evidence of violations of 18 U.S.C. § 2250. The application named the place to be searched as Daniels' suspected residence at 1911 Carpenter Street in Philadelphia, Pennsylvania, the person to be searched as Daniels, and the items to be searched or seized. The list of items included, *inter alia*, Daniels' property and personal items, documents, records, computer and electronic device passwords, computer hardware, and computer software containing evidence of violations of 18 U.S.C. § 2250. In particular, paragraph 2 permitted law enforcement to search and seize:

> All documents, to include in electronic form, and stored communications including contact information, text messages, call logs, voicemails, Internet searches, photographs, videos, and any other electronic data or other memory features contained in the devices and SIM cards including correspondence, records, opened or unopened e-mails, text messages, chat logs, Internet history, GPS data, location data, map data, pertaining to CHRISTOPHER DANIELS residing at the searched premises, moving into the searched premises, moving from one residence to another, or CHRISTOPHER DANIELS' sex offender registration status and requirements.

Mot. Suppress Ex. A, Search and Seizure Warrant at 19 ¶ 2, ECF No. 33-1 (hereinafter cited to as "Search Warrant"). The Honorable Lynne A. Sitarski approved the warrant, and a law enforcement

---

[1] The following factual findings are based on the evidence presented at the evidentiary hearing on February 14, 2024, which included the search warrant and its supporting documentation, the transcript of Daniels' statements to law enforcement, and the testimony of Federal Bureau of Investigation Special Agent James Zajac. The Court found Agent Zajac to be credible in all respects.

2

team executed it on November 3, 2022. The team consisted of two members of the U.S. Marshals Service, five members of the Philadelphia Police Department, and five FBI agents, including Agent Zajac. The evidence seized on November 3rd included numerous electronic devices, including three cell phones.

During execution of the warrant, Agent Zajac interviewed Daniels. Agent Zajac first explained that the team had a search warrant for the house and he was recording the interview. He then told Daniels:

> So, before we ask any questions, you must understand your rights like I said. You have the right, right to remain silent. Anything you say can be used against you in court. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. Now, having been read this statement of your rights and understanding what your rights are, um, do you want… Are you willing to answer questions without a lawyer present right now?

Mot. Suppress Ex. B, Verbatim Tr. 2:27-36, ECF No. 46-1 (hereinafter cited as "Verbatim Tr."). Daniels responded: "I guess it depends on the question." *Id*. at 2:38. Agent Zajac then restated that Daniels could answer anything he wanted or not, and doing so was part of his rights. *Id*. at 2:40-43. Agent Zajac added, "if we ask you something, and you don't want to answer, you don't have to. Does that make sense?" *Id*. at 2:41-43. Daniels answered affirmatively. *Id*. at 3:2. Agent Zajac then confirmed: "So you're okay to talk to us, right now, with that understanding?" *Id*. at 3:4. Again, Daniels said yes. *Id*. at 3:6. In addition to receiving these verbal *Miranda* warnings, partway through the interview Daniels signed a written waiver of his *Miranda* rights. *See id.* at 11:8-24.

During the interview, Daniels invoked his right to counsel three times. He first invoked this right when Agent Zajac asked, "what did you like to do?" regarding Daniels' efforts to work for himself. *Id*. at 4:29-37. Daniels responded: "I was trying to do, uh, actually, I don't want to answer that without a lawyer." *Id*. at 4:39. Zajac responded, "Ok, that's fine" and asked an

unrelated question. *Id*. at 4:41-42. Daniels invoked his right to counsel a second time when discussing his probation:

> Agent Zajac: [I]t's my understanding you have not been in contact with your probation officer for a very long time. A few months at least, right?
>
> Daniels: Yes.
>
> Agent Zajac: What's going on there man?
>
> Daniels: Thinking that's something I don't want to answer without a lawyer.

*Id.* at 7:41-8:6. Again, Agent Zajac responded "Okay. That's fine" and moved on to a different topic. *Id*. at 8:8-12. Finally, Daniels invoked his right to counsel when Agent Zajac asked if law enforcement would find any child pornography on the seized devices. *Id*. at 15:5-19. Daniels responded, "that's definitely something that I'm not even, that's one of those things I'm not talking about without a lawyer." *Id*. at 15:25-26. For the third time, Agent Zajac responded "Okay. That's fine" and asked about a different topic. *Id*. at 15:28-34. Agent Zajac did not ask about Daniels' self-employment, failure to report to his probation officer, or possession of child pornography again.[2]

Although Agent Zajac had an arrest warrant for a violation of supervised release and intended to arrest Daniels at the conclusion of the search, Agent Zajac did not advise Daniels of this information, nor did he take Daniels into custody while they spoke. Agent Zajac also testified credibly that Daniels was articulate, attentive, and responsive, seemed to understand everything, and was looking at Agent Zajac during questioning.

---

[2] Agent Zajac did ask about Daniels' employment with "Price Action Trading" and his other conditions of supervised release, such as his sex offender registration updates. *See* Verbatim Tr. at 12:24-43, 8:8-12, ECF No. 46-1.

After the search ended, FBI Special Agent Daniel Johns conducted a data extraction of three seized cell phones using the Cellebrite Premium software. The next day, November 4, 2022, Agent Zajac started to review the extracted data using the Cellebrite Physical Analyzer program.[3] Physical Analyzer opens the extracted data, parses it, and places it into different categories, such as images. Agent Zajac started his review with the cell phone found in Daniels' bedroom and viewed the images category. As Agent Zajac began scrolling through the thumbnails, he quickly found three images of child pornography which had been cached from the phone's Gallery application.[4] Agent Zajac stopped his review and applied for a second warrant to search for evidence of child pornography, which he obtained on November 7, 2022. Agent Zajac then completed his review of the data extractions from Daniels' devices and found a collection of more than 6,400 images and videos of child pornography and child erotica.

**DISCUSSION**

Daniels makes three arguments to suppress the evidence against him. First, he argues the search of the cached data on his phone exceeded the scope of the search warrant, as cached data was not specifically delineated in the list of items to be seized and searched. Second, he argues that if the search of cached data did not exceed the warrant's scope, then the warrant was overly broad. Third, he argues his right to counsel was violated because Agent Zajac did not immediately cease all questioning after Daniels invoked the right in response to specific questions. Because (1)

---

[3] Agent Zajac testified he would usually use a different tool to perform this review, but because that tool would have flagged child pornography, and the search warrant was only for violations of § 2250, he used Physical Analyzer.

[4] As explained by Agent Zajac, cached data shows that a file has been opened or viewed at some point. In the affidavit of probable cause submitted with the warrant application, he also explained that electronic data can be saved intentionally through, for example, traces of internet activities left in the web cache of a browser. *See* Search Warrant at 3 ¶ 9.c., ECF No. 33-1.

5

the cached data fell within the plain language of the warrant, (2) the warrant was not overly broad, as it was limited to a search for evidence of a § 2250 violation, and (3) Daniels was not in custody during questioning, the motion to suppress will be denied.

### A. The Search of Cached Data

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This guarantee ordinarily requires law enforcement to obtain a probable cause warrant before conducting a search or seizure. *See United States v. Crandell*, 554 F.3d 79, 83 (3d. Cir. 2009). But when "law enforcement officers, acting pursuant to a valid warrant, seize an article whose seizure was not authorized and which does not fall within an exception to the warrant requirement," then "that evidence which was seized illegally must be suppressed[.]" *United States v. Christine*, 687 F.2d 749, 757 (3d Cir. 1982). Even if, however, seized evidence falls outside the scope of a valid warrant, it may nevertheless be admissible under the good-faith exception to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897 (1984). *See, e.g.*, *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001).

Daniels argues the search of his cached data was not authorized by the § 2250 warrant because cached data was not among the specific items listed to be searched and seized. He also argues the good faith exception should not apply in this case. The first argument, however, is belied by the plain language of the warrant, which authorized the search and seizure of "[a]ll documents, including in electronic form, and stored communications including . . . photographs, videos, and any other electronic data or other memory features contained in the devices and SIM cards[.]" Search Warrant at 19 ¶ 2, ECF No. 33-1. Cached data is stored in electronic form, and it is a memory feature. Though the warrant did not explicitly list cached data among the items to be

searched and seized, cached data was still within the warrant's purview. And defense counsel admitted as much at the evidentiary hearing. Evidentiary Hr'g at 4:24:08-4:25:21, Feb. 14, 2024 (court audio).[5] The evidence seized therefore fell within the purview of the warrant, so the Court does not need to address the remainder of Daniels' arguments regarding the good-faith exception to the exclusionary rule.[6]

## B. The Scope of the Warrant

"An overly broad warrant describe[s] in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002) (internal quotation marks and citation omitted). To determine whether a warrant is overbroad, the reviewing court "must compare the scope of the search and seizure

---

[5] At the hearing, the Court quoted from the Search Warrant at 19 ¶ 2 and asked, "doesn't that bring the cached data under the authority to search anything in the cell phone, laptops, and devices that eventually were identified and taken?" Counsel responded: "**It does**, but it runs into a different problem." (Emphasis added.) After the Court confirmed its understanding of Daniels' arguments, counsel argued that the "different problem" is a general, overbroad warrant, citing to *United States v. Stabile*, 633 F.3d 219 (2011). Evidentiary Hr'g at 4:26:23-4:26:53, Feb. 14, 2024 (court audio). This argument is addressed in the next section of this memorandum.

[6] Even if the cached data fell outside the warrant's scope, however, the Court concludes the good faith exception to the exclusionary rule would apply in this case. *See Leon*, 468 U.S. 897. When "an officer executes a search warrant in objectively reasonable reliance on a warrant's authority," the Court does not need to suppress evidence. *Hodge*, 246 F.3d at 307 (citation omitted). "The test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Id*. (alteration, citations, and internal quotation marks omitted). As a starting point, this case does not present any of the four situations in which the Third Circuit has said it would not be reasonable for law enforcement to rely on a search warrant. *See id*. at 308. Agent Zajac confirmed that the magistrate judge reviewed both the probable cause affidavit and attachments to the warrant, describing the place, person, and items to be searched. He also testified credibly that he understood the warrant to authorize a search of photos; used Cellebrite Physical Analyzer to minimize the possibility of finding child pornography; and began his review with photos to establish a timeline of when Daniels changed residences. Finally, the nature of § 2250, as discussed *infra*, is such that a long list of documents, photos, etc. to be searched was merited.

authorized by the warrant with the ambit of probable cause[7] established by the supporting affidavit." *In re Impounded Case (Law Firm)*, 840 F.2d 196, 200 (3d Cir. 1988). In considering such probable cause, the reviewing court gives "great deference" to the magistrate judge's determination. *Id.* If the reviewing court nevertheless determines the warrant is overbroad, the remedy is to strike the invalid clause(s). *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 149. Again, however, the evidence seized pursuant to the severed clauses "need not be suppressed if the good faith exception applies." *Id*.

Daniels argues the § 2250 warrant was overly broad because the list of items to be searched and seized was only limited by relevance to a § 2250 violation, and § 2250 criminalizes dozens of omissions. Additionally, Daniels argues that if the list of items covered his cached data, then "it is difficult to conceive of a type of digital information that remained beyond [its] scope." Mem. Law 21, ECF No. 33. And he argues a second time that the good-faith exception should not apply to the seized data.

Though the Court acknowledges the warrant's list of items to be searched is extensive, as noted by Daniels, § 2250 criminalizes "dozens" of "omissions," instead of acts. *Id.* The underlying violation sought to be proved thus supports finding that the long list of items to be seized was not overbroad. *See, e.g.*, *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 149 (concluding that though the scope of a warrant was "certainly extensive" and "indubitably broad," it did not violate the Fourth Amendment, in part because "a principal purpose of the warrant was to prove a negative."). And as acknowledged by the Third Circuit,

---

[7] As noted in Daniels' briefing, he was on supervised release in 2022, and so law enforcement only needed reasonable suspicion, not probable cause, to search. *See* Mem. Law 19, fn. 6, ECF No. 33 (citing to *United States v. Griswold*, Crim. No. 09-568, 2010 WL 2853719 (E.D. Pa. July 20, 2010)).

"distinctive concerns … apply to searching computers, hard drives, and other electronic storage media[.]" *United States v. Morgan*, 562 F. App'x 123, 127 (3d Cir. 2014) (non-precedential). Computers and other electronic devices can store enormous amounts of data. *See id.* at 128. Accordingly, "[b]y necessity, government efforts to locate particular files will require examining a great many other files[.]" *Id.* The warrant in this case, like the warrant in *Morgan*, was limited to items that could provide evidence of the crime for which reasonable suspicion was established: a violation of § 2250. As such, the warrant was not overbroad.

### C. Daniels' Statements to Agent Zajac

A defendant must be warned of his right against self-incrimination and his right to an attorney before he can be subjected to custodial interrogation by police. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation occurs when law enforcement questions a defendant after he "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Rhode Island v. Innis*, 446 U.S. 291, 298 (1980) (quoting *Miranda*, 384 U.S. at 444). "[T]he ultimate inquiry is: whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Vidal*, 85 F. App'x 858, 861 (3d Cir. 2004) (internal quotation marks and citation omitted). Where a defendant is questioned but an arrest has not been made, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so." *Id.* (internal quotation marks and citation omitted). This determination is objective. *Id.* "The question is whether a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (internal quotation marks and citation omitted).

Daniels argues his right to counsel was violated because he stated he wanted a lawyer three times and questioning did not cease. But for *Miranda* rights to attach, Daniels must have been in custody – and the Court concludes he was not. Despite Agent Zajac's acknowledged intention to arrest Daniels at the conclusion of the search, Agent Zajac did not inform Daniels of the arrest warrant, tell him he could not leave, or arrest him prior to questioning. Rather, Agent Zajac informed Daniels of the search warrant and of his *Miranda* rights, including his right to not answer any specific question, and his right to cease the questioning at any time. Later in the interview, Daniels voluntarily signed a waiver of his *Miranda* rights. The interview occurred in Daniels' own home, and Agent Zajac testified credibly that Daniels appeared to be responsive and understand everything he was asked. And while twelve law enforcement agents executed the search warrant, Agent Zajac conducted most of the interview with Daniels alone. The record thus does not show Daniels was objectively subject to a *custodial* interrogation when he made the statements he seeks to suppress. Even if the Court concluded otherwise, Daniels' invocations of the right to counsel were limited to questions regarding his self-employment, failure to report to his probation officer, and any possession of child pornography. Agent Zajac honored these invocations and turned to different topics. These facts do not support Daniels' claim that his right to counsel was violated. *See, e.g.*, *United States v. Rought*, 11 F.4th 178, 190 (3d Cir. 2021) ("[I]f a suspect makes a limited invocation of the right to counsel[,] . . . [l]aw enforcement must honor the suspect's request and cease interrogation concerning any topics covered by the invocation.").

**CONCLUSION**

Law enforcement did not violate any of Daniels' constitutional rights: cached data was within the scope of the § 2250 warrant; the warrant was not overly broad, as it was limited to

evidence of § 2250 violations; and Daniels was not in custody when he spoke with Agent Zajac. Therefore, the motion to suppress will be denied.

                BY THE COURT:

                /s/ Juan R. Sánchez
                Juan R. Sánchez, J.